**HYDRO COOPERATIVE ASSOCIATION,**
Appellant,

v.

**Melvin SHANTZ, Appellee.**

**No. 80577.**

Court of Appeals of Oklahoma,
Division No. 4.

July 6, 1993.

John W. Donley, Weatherford, for appellant.

Douglas L. Jackson, Gungoll, Jackson, Collins & Box, P.C., Enid, amicus curiae for Farmers Co-op. Grain Dealers Ass'n.

Ellis Cabaniss, Graft & Cabaniss, Clinton, for appellee.

BOUDREAU, Presiding Judge.

■ One issue is dispositive of this appeal: Can a farmer who is a member of a cooperative marketing association require the cooperative to accept the farmer's stock and stock credits in the cooperative for payment of his open account? We answer this question in the negative and reverse the trial judge.

Plaintiff is a cooperative marketing association duly formed under the Cooperative Marketing Association Act. 2 O.S.1991 §§ 361a–361w. Defendant is a farmer and is a member of the Association. As a member of the Association, Defendant accumulated stock and stock credits in the Association as annual distributions of its profits in the amount of $6,692.67 at par value. The stock and the stock credits were distributed in proportion to the member's patronage of the Association and were issued without due date.

Defendant also accumulated an open account with the Association in the amount of $9,181.96. The Association sued Defendant asking for judgment on the debt. Defendant answered, requesting that the court order the Association to set off the face value of Defendant's stock and stock credits against the debt owed by Defendant to the Association. As there were no material facts in controversy regarding the amount of the debt and the par value of the stock, the court ordered each party to submit a Motion for Summary Judgment. After receiving both motions, the court entered judgment for the Association but ordered it to accept the par value of Defendant's stock and stock credits against its debt. It is from this order that the Association appeals.

■ As there are no material facts in controversy, this case presents a question

of law. Review of law is called "de novo," which means no deference, not necessarily a full rehearing or new factfinding. *Bose Corp. v. Consumers Union of U.S. Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■ Cooperative marketing associations are organized under the provisions of the Cooperative Marketing Associations Act. 2 O.S.1991 §§ 361a–361w (The Act). The purpose of cooperative marketing is to promote and encourage the intelligent handling, processing and order marketing of agricultural products. 2 O.S.1991 § 361a. The affairs of cooperative associations are managed by boards of directors. 2 O.S. 1991 § 361n.

The general powers of such cooperatives are listed in § 361e of the Act. Among the powers enumerated in that section is the power "[t]o establish and accumulate reserves including a permanent surplus fund as an addition to capital." 2 O.S.1991 § 361e(e). The articles of incorporation and the bylaws of an association provide the means to obtain the necessary funds or capital to pay the expenses of operation and to acquire property necessary to carry out the association's purposes. 2 O.S.1991 §§ 361f, 361i.

Section 361*l* (a) of the Act requires that, at the conclusion of the cooperatives's fiscal year, the directors shall prepare an audited financial statement which reflects whether the cooperative made a profit or loss. 2 O.S.1991 § 361*l* (a). Furthermore, subsequent to the end of the fiscal year, the cooperative must hold an annual meeting to present the audited financial statement to the members and to distribute the profit (if there be one) as required by section 361*l*. *See* 2 O.S.1991 § 361m.

Prior to the meeting, the directors meet and determine how much of the profit should be distributed to the members in cash and how much should be distributed in stock. The reason that the cooperative issues stock is to enable it to retain part of its profit. It uses this retained profit to maintain an operating capital account to enable it to adequately function. The prof-

it, whether in cash or stock, is distributed to the members of the association based upon the amount and type of business that a particular member has done with the cooperative during the previous fiscal year. 2 O.S.1991 § 361*l* (d).

■ The bylaws of a cooperative association are a contract between the cooperative and its members and stockholders and govern transactions between them. *See generally Oklahoma Ass'n of Ins. Agents v. Hudson*, 385 P.2d 453, 455 (Okla.1963). Among the matters which may be governed by the bylaws according to the Act is "the method, time and manner of permitting members to withdraw or to transfer their stock. . . ." § 361i(i).

In the case at bar, the Association's bylaws specified the manner in which the stock and stock credits could be redeemed by the Association. The Association was obligated to retire capital stock of its members under only two circumstances: (1) upon the death of a member, and (2) upon the cessation of his eligibility for membership. In addition, the Association was given the discretion to purchase a member's share should the member cease to patronize the Association for a period of three consecutive years or should the member willfully obstruct the purposes and activities of the Association. The Board of Directors of the Association was also given the discretion to adopt a uniform policy providing for retirement of stock upon a member's retirement from farming or reaching a certain minimum age limit. Defendant, in this case, did not meet any of the established criteria for stock redemption set out in the bylaws or the retirement policy.

■ It has long been recognized in Oklahoma that, for a claim to be a proper subject for a set-off, it must be one that is presently due and payable. *Beams v. Young*, 92 Okl. 294, 222 P. 952, 954 (1923). In the *Beams* case, it was noted by the court that, "[a] set-off is in the nature of a cross-action, and a claim in order to be a proper matter of set-off, must be a subsisting debt. . . ." *Id.*

■ The Oklahoma Supreme Court has not addressed the issue of whether stocks or stock credits of a cooperative are an interest of a stockholder that is vested and immediately payable. However, courts of other jurisdictions have considered this issue and answered the question in the negative. In *Howard v. Eatonton Cooperative Feed Company*, 226 Ga. 788, 177 S.E.2d 658, 662 (1970), the Supreme Court of Georgia concluded that equity credits could not be used as a set-off, stating, "Equity credits are not an indebtedness of a cooperative that is presently due and payable to the members, but represent an interest which will be paid to them at some unspecified later date to be determined by the Board of Directors." In *Atchison County Farmers Union Co-op. Association v. Turnbull*, 241 Kan. 357, 736 P.2d 917, 920 (1987), the Supreme Court of Kansas similarly held that equity credits of a stockholder of a cooperative association constitute an interest which is contingent and not immediately payable. In addressing the same issue, the Supreme Court of Mississippi stated in *Clarke County Cooperative v. Read*, 243 Miss. 879, 139 So.2d 639, 641 (1962):

> It is well settled that equity credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to such patron. Such equity credits represent patronage dividends which the board of directors of a cooperative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the cooperative, but in such manner as to provide or retain capital for the cooperative and at the same time reflect the ownership interest of the patron in such retained capital. The interest will be paid to the patron at some unspecified later date to be determined by the board of directors of the cooperative.... The patron has no right to off-set such equity credits, not being an indebtedness which is presently due and payable, against an indebtedness which is presently due and payable by him to the cooperative.

We believe that the Oklahoma Supreme Court would agree with these authorities in characterizing stock and stock credits as interests that are contingent and not immediately payable. Accordingly, they do not constitute a subsisting debt which would be the proper subject of set-off.

■ Defendant points out that on four different occasions the Association has chosen to set off the stock of four members against their open accounts, contrary to the Association's established policy. He argues that its refusal to do so in this case is arbitrary and capricious. The trial judge apparently found this argument persuasive as it referenced the fact in its ruling on the summary judgment.

A cooperative association has the power "[t]o do each and everything necessary, suitable or proper for the accomplishment of any one of the purposes, or the attainment of any one or more of the subjects herein enumerated, or conducive to or expedient for the interest or benefit of the association, and to contract accordingly...." 2 O.S.1991 § 361e(k). In our view, this section vests discretion in the Board of Directors to allow stock redemption in certain situations not authorized by the bylaws, as long as it furthers the best interest of the cooperative. Certainly, when exercising this discretion, the Board may not act arbitrarily or unreasonably, but must act for the benefit of the Association.

Defendant has failed to establish that the Association acted arbitrarily in allowing other stock redemptions and refusing this one. In each prior instance of redemption, the amount of the stock owned was less than $400.00, with one totalling only $10.63. In each prior instance, the decision to set off the stock was made upon the recommendation of the Association's accountant as being in the best interest of the Association for business purposes. It can be readily seen that it would not be economically practicable to require the Association to employ an attorney and initiate a lawsuit rather than simply set off these small amounts against the stock.

Defendant also argues that the Association should be required to foreclose its lien on the stock and stock credits. However, he offers no citation of authority to support his position. We cannot find where another court has required an association to involuntarily foreclose its lien on its own stock and we find the argument is without merit.

In conclusion, we hold that stock and stock credits in a cooperative marketing association constitute an interest of a member of the cooperative which is contingent and not immediately payable. The interest becomes vested when the established criteria for withdrawal or transfer set out in the Act or the bylaws are met or when the board of directors, in the exercise of its sound discretion, determines that such payment can be made in cash. Because neither of these conditions occurred in this case, the trial judge erred when he granted a set-off. The case is reversed and remanded to the trial court with instructions to enter judgment for the Association in the amount of $9,181.96.

STUBBLEFIELD and TAYLOR, JJ., concur.